677 F.Supp. 618 (1988)
Jillian KEMPF, Plaintiff,
v.
Karl Gene KEMPF, Defendant.
No. 87-1060C(A).
United States District Court, E.D. Missouri, E.D.
January 11, 1988.
Christopher Karlen, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for plaintiff.
George D. Pittman, Donald E. Heck, Maniscalco, Pittman, Flach & Heege, Clayton, Mo., for defendant.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on defendant's motion for summary judgment. The Court's jurisdiction over the complaint is based on 28 U.S.C. § 1331, as the cause of action arises under the Federal wiretapping statutes, 18 U.S.C. § 2510 et seq. Venue is properly in the Eastern District of Missouri because the cause of action arose here.
*619 The following facts give rise to this dispute. Plaintiff and defendant were married on December 19, 1980. They purchased a home on April 1, 1984. After they moved into their home, defendant became suspicious that plaintiff was engaging in extra-marital affairs because on numerous occasions defendant would answer the telephone, only to have the caller hang up or claim he had reached a wrong number. This activity went on long enough that defendant began to recognize some of the voices.
On June 2, 1985, defendant connected a cassette tape recorder to one of the three telephones in the home. The telephone and recorder were in full view, situated on a desk in the basement of the home. Through the use of this recording device, defendant was able to record telephone conversations plaintiff had with various individuals. After listening to these conversations, defendant surmised that plaintiff was having sexual affairs with the callers. Defendant confronted plaintiff with his suspicions and she admitted to the affairs. Defendant informed plaintiff that he had recorded her telephone conversations and would continue to do so should she persist in the affairs. Thereafter, the parties reconciled and plaintiff agreed not to engage in any further extra-marital affairs. In late June, 1985, the "wrong numbers" and "hang-ups" resumed. Defendant again became suspicious and recorded plaintiff's conversations. On October 19, 1985, after concluding that plaintiff had renewed her affairs, defendant moved away from the family home.
On September 5, 1985, defendant filed a petition for dissolution of marriage in the Circuit Court of the County of St. Louis, Missouri. Defendant charged plaintiff with marital misconduct by having sexual relations with other men while the plaintiff and defendant lived together as husband and wife. Defendant offered into evidence the above-mentioned tapes of plaintiff's telephone conversations. These tapes were admitted by the Circuit Court over plaintiff's objection. On May 18, 1987, the Circuit Court entered its judgment dissolving the marriage of these two parties. Neither party appealed from the findings, judgment and decree, and it is now final.
On June 2, 1987, plaintiff filed suit for damages in this Court against defendant for violation of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (hereinafter referred to as Title III) in Count I, and invasion of privacy in Count II. Plaintiff claims defendant violated a federal law which proscribes wiretapping when he connected the cassette recorder to the family telephone.
The pertinent language of the statute reads as follows:
18 U.S.C. § 2510(1):
"(1) `wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications; * * *"
18 U.S.C. § 2510(4) and (5):
"(4) `intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.
"(5) `electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire or oral communication other than 
"(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;
"(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal; * * *"

*620 18 U.S.C. § 2511(1):
"(1) Except as otherwise specifically provided in this chapter any person who 
"(a) willfully intercepts endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;
"(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when 
"(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; * * *
"(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or
"(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
shall be fined not more than $10,000 or imprisoned not more than five years, or both."
18 U.S.C. § 2520:
"Any person whose wire or oral communications is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person 
"(actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
"(b) punitive damages; and
"(c) a reasonable attorney's fee and other litigation costs reasonably incurred."
Defendant has filed a motion for summary judgment on the basis that Title III does not give a wife a cause of action against her husband when he intercepts her telephone conversations under the circumstances presented by this case. Defendant argues that this fact situation falls within an exception to the statute which provides for telephone equipment issued by the telephone service provider and used in the home in the user's ordinary course of business. Defendant further claims that plaintiff is collaterally estopped from bringing suit against defendant based on Title III becauses the issue of the illegality and admissibility of the wiretap has already been ruled on by the Circuit Court of St. Louis County during the divorce proceedings.
There is no Eighth Circuit case on point. The cases from other circuits display a split in authority in granting a federal remedy under this statute to marital parties.
The leading case refusing to extend Title III to domestic conflicts is Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974), cert. denied 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). That court held that Title III does not apply where a wife's calls were intercepted, via wiretapping, by her former husband. At the time the calls were tapped, the couple was living together as husband and wife. The court engaged in an exhaustive review of the legislative history leading to the statute's enactment. The court concluded that Congress did not intend for Title III to reach what is typically a state matter because the drafters did not indicate that it should. The court was of the opinion that application of federal law to domestic relations was too "novel" a concept without specific direction from Congress.
Interestingly, the Fifth Circuit has extended the statute to one type of domestic situation. In U.S. v. Schrimsher, 493 F.2d 848 (5th Cir.1974), a man hid for five days under his lover's (also the mother of his child) house and electronically intercepted *621 her calls. The Schrimsher court compared the circumstances before it to the facts in Simpson, and noted that the Simpson court "emphasized that `[n]o public official is involved, nor is any private person other than [the wife], and the locus in quo does not extend beyond the marital home of the parties.' (490 F.2d at p. 810). Schrimsher has never been married to Roberts [his lover]. At the time of the incident in question, he was not a part of the Roberts' household, and had no legal right to be on the premises or to tape record Roberts' telephone conversations. Under these circumstances, Schrimsher's conduct is within the scope of the statute." Schrimsher, at p. 851.
The Eighth Circuit distinguished Simpson and held that Title III applies to wiretap equipment installation by a private detective which was done in a marital home and at the request of the wife, who was suspicious that her husband was having an extra-marital affair. White v. Weiss, 535 F.2d 1067 (8th Cir.1976). The husband brought suit against the detective and the investigative corporation. The district court dismissed the action in reliance on Simpson. The Eighth Circuit Court of Appeals, in reversing the dismissal, limited reviewing the applicability of Title III to the facts of that case, and said "[n]either the legislative history, nor the language or holding of Simpson insulates a private detective from civil liability for violations of the Act * * *." White, at page 1069. Throughout the opinion the court was careful in emphasizing that the domestic situation therein fell under the authority of Title III only to the extent that a civil cause of action was available to a spouse against the third-party detective. The question of whether a cause of action would be available against the other spouse was avoided.
The Sixth Circuit applied Title III in a case where the husband had left the marital home and was under a restraining order from the Chancery Court which prevented him from "coming about" his wife. U.S. v. Jones, 542 F.2d 661 (6th Cir.1976). The husband entered his wife's home and connected a wiretap device to her telephone. The court held that the husband's conduct was subject to the federal law. The Jones court conceded that Simpson might very well have correctly decided on its facts, but distinguished the two cases because there was no "marital home" in Jones, as the parties were not living together at the time of the surveillance.
The Second Circuit elected to follow Simpson in a case where a divorced man tapped his own telephone for the purpose of recording conversations between his ex-wife and his eight-year-old daughter, of whom he had custody. Anonymous v. Anonymous, 558 F.2d 677 (2nd Cir.1977). In refusing to apply federal law to what it called a "pure domestic conflict," the court noted that the statute creates an exception for the use of an extension telephone in overhearing telephone conversations, and found that the action taken in this case was similar enough to fall within that exception.
There is only one appellate opinion the Court has found where no exception was found to exist under Title III for electronic surveillance between spouses sharing a marital home. Pritchard v. Pritchard, 732 F.2d 372 (4th Cir.1984). In this case, the wife attached a wiretapping device to the family telephone without her husband's knowledge or consent. The court agreed with Simpson, in that federal courts are not the suitable forums for domestic conflicts, but felt bound by the express wording of the statute. The court felt that the statute's legislative history contained no implications suggesting that interspousal tapping should be exempted from the scope of the federal remedy.
In the instant case, this Court elects to follow Simpson. Based on the precise facts presented, we find application of Title III would be in complete disharmony with the traditional practice of litigating domestic conflicts in the state courts. The Court realizes that taken at face value, Title III would appear to offer the plaintiff herein a remedy, but in view of the fact that the federal court system historically has not been receptive to domestic matters, the Court finds it necessary to take one more look at the statute's legislative history.
*622 It is true, as the Jones court emphasized, that Congress was well aware that one prominent use of electronic surveillance was in preparation for divorce litigation. In one of a number of hearings leading to the revisions of the federal wiretapping laws, Senator Long, chairman of the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 89th Cong. 1st Sess. (1965-66), identified three major areas where wiretapping was utilized: "The three large areas of snooping in this [non-government] field are: (1) industrial; (2) divorce cases; and (3) politics." Senator Long also included in the hearing's record an article by Arthur Whitman, entitled "Is Big Brother Taping you," which said, in part: "Individuals involved in civil suits bug each other's premises to gather useful information and evidence. The prime area for this is divorce actions, particularly in states with restrictive codes. So little is sacred in this line that bugs are routinely discovered under the beds of estranged husbands and wives who suspect each other of errant ways." (Emphasis added.)
During testimony before the Subcommittee on Administration Practice and Procedure of the Senate Committee on the Judiciary, 90th Cong., 1st Sess., pt. 2, at 413 (1967), Professor Robert Blakely (the author of Title III) spoke about the Right to Privacy Act of 1967 which banned private electronic surveillance. In a reference to domestic relations investigation, Professor Blakely said: "[E]lectronic surveillance by a private individual in another's bedroom cuts most sharply against the grain."
The Court is of the opinion that Congress did not intend to give a remedy for interspousal wiretapping when the parties involved were sharing a home and living together as husband and wife at the time the wiretap was utilized. Extending federal law into such a purely domestic matter runs counter to the tradition federal courts have followed in leaving family matters to the discretion of the state courts. It is one thing to apply this law in the case of an estranged couple where the surveillor has no legal rights to begin with in entering the separate home of the surveilled spouse. It is quite another to forbid a person from attaching a wiretapping device on his or her own telephone within the marital home. This type of spouse-snooping might be morally reprehensible in some respects. Nonetheless, it is an inappropriate subject for federal litigation, and the Court does not believe, in view of the congressional testimony and the historical view that state courts are better facilitated to handle domestic conflicts, that Congress meant for Title III to apply to the facts herein.
Accordingly, the motion of defendant for summary judgment is granted. The Clerk of the Court will prepare and enter the proper order to that effect.