UNITED STATES of America, Plaintiff,

v.

Jose NICHOLAS, Defendant.

No. 88 CR 79–5.

United States District Court,
N.D. Illinois, E.D.

March 4, 1988.

Anton R. Valukas, U.S.Atty. by Canella Henrichs, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Ralph Meczyk, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This order concerns defendant Jose Nicholas' motion for review of Magistrate Balog's February 8, 1988 determination that Nicholas be detained without bail prior to trial. For the reasons stated below, this court agrees with the Magistrate and orders Nicholas to remain in custody pending trial.

### I. FACTS

After reviewing the uncontested findings contained in the Magistrate's detention order and conducting a hearing at which Magistrate Balog and Nicholas testified, the following facts emerged:

On February 1, 1988, Nicholas was arrested for conspiring to possess with intent to distribute and for distributing approximately three kilograms of a mixture containing cocaine. An indictment followed on March 1, 1988 charging Nicholas and four co-defendants with various narcotics offenses including violations of 21 U.S.C. § 841(a)(1) (distribution) and 21 U.S.C. § 846 (conspiracy). If convicted of these offenses, Nicholas would face a minimum sentence of five years incarceration to a maximum of life imprisonment, without the possibility of parole.

Nicholas' arrest stemmed from his alleged involvement in a sale of 3,049 grams of cocaine to an undercover agent. The government asserts Nicholas and a co-defendant transported the cocaine in a Pontiac Grand Prix to a location where the drug sale was to occur. After arriving at the scene of the intended transaction, Nicholas and his companion switched cars with a third co-defendant, Camilo Rivera, who was driving a Cadillac. Nicholas departed in Rivera's Cadillac, and Rivera remained in the Grand Prix to meet the undercover agent. The cocaine, which was contained in a large pouch, was offered to the undercover agent, and the defendants were arrested. Aside from the cocaine, the pouch was found to contain certain personal "religious" papers which Nicholas admitted were his. Nicholas also told arresting agents that God made cocaine, so it could not be illegal and that if God wanted him to go to jail, he would go.

Because of his reluctance to speak with pre-trial services, no pretrial report detailing personal and employment facts about Nicholas was prepared. That following information is based on Nicholas' unverified testimony before this court.

Nicholas is a resident alien of the United States, and a citizen of the Dominican Republic. He is fluent in English and has resided in the United States for the last 16 years with the exception of a period of time approximately six years ago when he returned to the Dominican Republic in connection with his employment with General Motors Corporation. Prior to his arrest, he lived in a Chicago apartment by himself. He is a veteran of the armed services and possesses no criminal record.

Presently, he is separated from his wife and three children who reside in the Dominican Republic. With the exception of a brother living in Florida, Nicholas claims to have no family in the United States. Since coming to Chicago five years ago, Nicholas has been employed by John Torrez, a self-employed independent contractor. Nicholas works for Torrez as a handyman and receives $300 to $350 cash for an average work week. Nicholas has never filed a tax

return in connection with his earnings from this job.

Nicholas describes himself as a devout Catholic. He frequently writes religious papers and believes his primary obligation is seeking God's will for his life. Nicholas states that he desired to attend Moody Bible Institute in Chicago, but found the tuition to be too expensive.

At the detention hearing before Magistrate Balog, an incident occurred involving Nicholas and the federal prosecutor assigned to his case. According to the testimony of Magistrate Balog, immediately after the prosecutor completed her argument urging Nicholas' detention, Nicholas moved forward in his seat and stared at the prosecutor in a belligerent and threatening manner. The Magistrate described the stare as so intimidating that "if looks could kill, [the prosecutor] would have been dead." Nicholas later explained that he was merely upset because the prosecutor made untrue statements about his status as a legal alien and did not intend to threaten the attorney in any way.

Days after the hearing, on February 8, 1988, Magistrate Balog entered a written order finding that Nicholas posed a serious risk of flight and danger to other persons and the community. Because the Magistrate found no condition or combination of conditions could reasonably assure the appearance of Nicholas and the safety of other persons and the community, the Magistrate ordered that Nicholas be detained pending trial. In his instant motion, Nicholas seeks vacation of the Magistrate's detention order and requests reasonable conditions of pre-trial bail be set.

## II. DISCUSSION

■ Nicholas' objection to his pre-trial detention requires this court to conduct a *de novo* review of the Magistrate's order. According to § 3142 of the Bail Reform Act, once probable cause exists to believe a defendant has violated certain federal narcotics laws, a rebuttable presumption arises that no condition or set of conditions exist which reasonably could assure the safety of the community if defendant is released. 18 U.S.C. § 3142(e). The production of some evidence by the defendant that he is not dangerous requires the court to consider the presumption together with other relevant considerations set out in § 3142(g) before coming to the conclusion of whether bail should be allowed. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986). Once evidence has been produced by the defendant, the court cannot point solely to the presumption as clear and convincing evidence that bail must be denied. *Id.*

■ The narcotics offenses with which Nicholas is charged raise the presumption under § 3142(e) that pre-trial bail is inappropriate. Nicholas maintains that his testimony concerning the duration of his residency in the United States, his employment history, and his service in the armed forces show that he is not dangerous and unlikely to flee. Although this court expresses discomfort in relying solely on the uncorroborated testimony of Nicholas for establishing defendant's personal and employment history in the Northern District of Illinois, this court is nonetheless forced to find that Nicholas has presented at least "some evidence" to rebut the statutory presumption favoring detention. Thus, the question becomes whether clear and convincing evidence exists that Nicholas is dangerous or likely to pose a risk of flight.

■ No disagreement exists that the government possesses a strong case against Nicholas for the charged offenses. Papers which Nicholas claimed were his were found in the pouch containing the cocaine. Nicholas' statement during his arrest that cocaine should not be illegal indicates he knew what the pouch contained and that possession of the drug was a criminal offense. Nicholas is charged with serious narcotics offenses which carry substantial mandatory jail terms if he is convicted. Although no evidence was presented that he has any criminal background, Nicholas' lack of family ties and dubious employment history as a handyman in Chicago weigh against pre-trial release. As noted during Nicholas' cross-examination, his wife and children live in the Dominican

Republic, and prior to his arrest he planned to have them come to Chicago to live with him. This court is also somewhat puzzled by Nicholas' testimony that he desired to attend Moody Bible Institute but was unable to afford the tuition. Moody Bible Institute charges no tuition to its students.

In light of the lack of family and community ties which Nicholas has with the Chicago area, the gravity of charged offenses, the strong possibility of substantial incarceration and the location of his immediate family in Latin America, this court is compelled to find that Nicholas poses a substantial risk of flight. Therefore, pre-trial bail was properly denied by Magistrate Balog.

As to any threat of danger which Nicholas might pose to persons or the community, this court expresses some concern over Nicholas' conduct during the detention hearing before Magistrate Balog. Although Nicholas did not verbalize any threat of harm to the prosecutor, the incident alarmed Magistrate Balog and led to a finding that Nicholas posed a threat of danger to "other persons and the community." As the incident could not be replayed before this court and the Magistrate's testimony indicated that the reaction was quite threatening, a sufficient basis exists to deny bail on the ground that Nicholas poses a threat of danger to the prosecutor.

### III. CONCLUSION

For the foregoing reasons, the detention order entered by Magistrate Balog is adopted, and Nicholas is ordered detained under 18 U.S.C. § 3142 pending trial.

IT IS SO ORDERED.