603 A.2d 990

M.G. PLAINTIFF, v. J.C. DEFENDANT.

Superior Court of New Jersey
Chancery Division Monmouth County
Family Part

Decided August 27, 1991.

*Alan J. Cornblatt*, Attorney for Plaintiff.
*James P. Jones*, Attorney for Defendant.

## OPINION

FELDMAN, J.S.C.

This action for divorce raises a question never previously addressed by the Courts of New Jersey.

Is it a statutory violation for one spouse to tape his wife's telephone communications from within the marital home? The utilization of telephone taping equipment in potential divorce scenarios has become more and more prevalent, and the efficacy of intra-spousal taping requires an analysis of the prevailing statute. *N.J.S.A.* 2A:156A–3 provides that:

> "Except as otherwise specifically provided in this act, any person who:
>
> a. Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication; or

b. Willfully discloses or endeavors to disclose to any other person the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication; or

c. Willfully uses or endeavors to use the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire or oral communication; shall be guilty of a misdemeanor and shall be fined nor more than $10,000.00 or imprisoned not more than 5 years, or both. Subsections b and c of this section shall not apply to the contents of any wire or oral communication, or evidence derived therefrom that has become common knowledge or public information."

In addition to the criminal sanctions, the act further provides for civil damages. Pursuant to Section 24.

"Any person whose wire or oral communication is intercepted, disclosed or used in violation of this act shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person or intercept, disclose or use, such communication; and shall be entitled to recover from any such person:

a. Actual damages, but not less than liquidated damages computed at the rate of $100.00 a day for each day of violation or $1,000.00, whichever is higher;

b. Punitive damages; and

c. A reasonable attorney's fee and other litigation costs reasonably incurred." (N.J.S.A. 2A:156A–24)

The facts in this case are not in dispute. At the time of the initial taping, the husband and wife were living together (albeit in a state of armed truce) with their two children and the wife's parents. The marital difficulties had reached a point where it became obvious that the wife was going to file a complaint for divorce. The husband decided to install a hidden voice-activated telephone recorder so as to be able to confirm his suspicions that his wife was having an extra-marital affair, intending to use that information against her.

The house had two separate telephone lines. The business phone located in the loft/office area had a normal telephone answering machine attached. The "personal" phone had several extensions including one in the office area. The husband installed a recording device on the personal phone line and over a course of time secretly recorded over 8 hours of telephone conversations made and received by the wife, her parents, and

even himself, when he used the phone. He would then periodically review the tapes to determine the substance of all of the calls. Needless to say, most of the calls were innocuous, but some were not.

The tapes revealed that the wife was having a non-heterosexual affair. The husband immediately confronted the wife with the tapes and threatened to use them in a custody battle and further to destroy her reputation with friends, family and coworkers. The wife was absolutely devastated. The testimony makes it abundantly clear that she suffered extreme emotional distress, a severe personality change, and requires extensive psychological treatment.

Moreover, the husband was not satisfied with the potential use of the tapes (assuming they were admissible) in a divorce action, but indeed followed through with his threats to attempt to destroy her reputation with friends and family. He offered to play the tapes to several close family friends (who declined his invitation) and did play them for the wife's sister. Thus not only was there an "interception" but a "disclosure" as well. An "intercept" is defined as the

"aural acquisition of the contents of any oral communication through the use of any electronic, mechanical or other device" *N.J.S.A.* 2A:156A–2(c).

The husband claims that an exemption applies since excluded from the proscribed activities and devices are

"any equipment or facility or any component thereof, furnished to the subscriber or user by a communications common carrier and the normal cause of its business and being used by the subscriber or user in the ordinary course of its business......" *N.J.S.A.* 2A:156A–2(d)

Although there are no reported New Jersey cases regarding interspousal wiretapping, there is a significant amount of federal case law which can be utilized in an attempt to interpret the statute. The Federal Statute controlling the use of any form of electronic surveillance is Title III of the Omnibus Crime Control and Safe Streets Act of 1968. (18 USCA 2510–2520 <1982 and Supp. IV, 1986>). This statute is virtually identical in language to the New Jersey Statute.

The Federal Courts are far from unanimous as to whether or not an interspousal exemption exists if the wiretapping occurs within the marital home. The cases turn on fact-sensitive issues such as the location of the taping devise and the identity of the party doing the taping.

The line of cases which hold that intra-spousal taping is not violative of the statute follow the reasoning of the seminal case of *Simpson v. Simpson*, 490 *F.*2d 803 (5th Cir.1974) *cert. den.* 419 *U.S.* 897, 95 *S.Ct.* 176, 42 *L.Ed.*2d 141 (1974). In *Simpson*, the husband taped and intercepted phone conversations between his wife and her suspected paramour by placing a recorder on the home telephone line. He then played the "mildly compromising" tapes to various friends and family members as well as to the wife's lawyer, on whose advice the wife agreed to an uncontested divorce. Circuit Court Judge Bell reasoned that the Federal statute was not designed for this sort of intra-family activity thus affirming the district court decision denying the wife any civil recovery. The Fifth Circuit found nothing in the legislative history to support the proposition that Congress intended to make interspousal wiretapping a federal crime. Citing a statement made by one of the witnesses at the congressional hearings that in reference to an extension phone:

"I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem" *Simpson* at 809, footnote 17.

the court reasoned that there was no convincing distinction between a household member picking up an extension phone or taping that same conversation. Moreover, the court found that given the criminal nature of the statute, it must be strictly construed so as to avoid "ensnaring behavior that is not clearly proscribed" (at 809)

Following the *Simpson* line of reasoning was the matter entitled *Anonymous v. Anonymous*, 558 *F.*2d 677 (2d Cir.1977). In this case the 8 year old daughter of the parties was living with her father. The father had instructed the child that whenever her mother called she was to press the "record"

button on the telephone answering machine (at the father's home) and thus surreptitiously tape the entire conversation. The *Anonymous* Court found that this activity was virtually identical to listening on an extension phone and thus fell within the statutory exemption of use within "the ordinary cause of business" (at *679*) and accordingly declined the wife's action for civil penalties.

A case pattern virtually identical to *Anonymous* resulted in the same conclusion in *London v. London*, 420 *F.Supp* 944 (S.D.N.Y.1976) aff'd subnom. In *London* the father was granted post-judgment custody of the children. He instructed his son to record all conversations between the mother and the children on his answering machine. The court opined that the recording of calls made or received on a family phone by a family member did not give rise to a statutory violation. Focusing in on the 'family' status of all the participants, the *London* Court found the *Simpson* theory persuasive.

In *Lizza v. Lizza*, 631 *F.Supp.* 529 (E.D.N.Y.1986) the parties each filed for divorce in New Jersey, but continued to reside under the same roof. The husband installed a recording device on the house phone for the purpose of preserving evidence of harassing phone calls. Later, he decided to use it to gather evidence relative to equitable distribution. After analyzing the differing positions of various circuits, the *Lizza* Court concluded that the *Simpson* approach made more sense due to the potentially serious ramifications of federal control over actions by family members within their own homes. The Court further went on to bar actions by third parties whose calls were intercepted on the "home phone".

Following this reasoning were several other cases, each with a slightly different fact pattern, but the same result. In *Janecka v. Franklin*, 684 *F.Supp.* 24 (N.D.N.Y.1987) a post-divorce taping by the husband of conversations between his child and the mother made for the purposes of psychological counselling of the child was held to be non-violative of the Act.

In *Platt v. Platt*, 685 *F.Supp.* 208 (E.D.Mo.1988) it was the estranged wife who installed the tape in her home and recorded conversations between the husband and child. Relying on its prior position as expressed in *Kempf v. Kempf*, 677 *F.Supp.* 618, 622 (E.D.Mo.1988) the Court reiterated:

> "It is one thing to apply this law in the case of an estranged couple where the surveillor has no legal right to begin with in entering the separate home of the surveilled spouse. It is quite another to forbid a person from attaching a wiretapping device on his or her own telephone within the marital home." *Kempf* at 622.

In *Perfit v. Perfit*, 693 *F.Supp.* 851 (C.D.Cal.1988) the same line of reasoning prevailed wherein the home phone was recorded to determine if all of the messages being left for the husband were in fact being delivered to him by his wife (In *Perfit*, there was also no evidence that the wife's conversations were actually ever taped.)

A significant number of Federal jurisdictions have adopted a contrary point of view specifically rejecting the *Simpson* doctrine for a variety of reasons. Although none of these decisions are binding on the redundant Courts of New Jersey, it is helpful to analyze the various points of departure from the interspousal immunity of *Simpson*. The Sixth Circuit specifically declined to follow *Simpson* in *United States v. Jones*, 542 *F.*2d 661 (6th Cir.1976). Mr. Jones also taped the calls of his estranged wife. The Court held that there was no such thing as spousal immunity. They criticized the *Simpson* Court for resorting to legislative history when the act was clear on its face. Moreover they found the *Simpson* analysis of that history to be far from persuasive. The *Jones* court found that neither of the two basic reasons utilized by *Simpson* justified the judicial grafting of an exemption to an unambiguous statute. The *Simpson* Court had found that the imposition of Federal law into family situations and the spectre of a Federal law running contrary to state laws concerning interspousal immunity for tort claims vs sufficient basis for creating a judicial exception to the statute.

The Sixth Circuit, however, found neither of these reasons particularly significant and accordingly refused to follow this Court-made doctrine of marital home immunity from wiretap prosecution.

In *Kratz v. Kratz,* 477 *F.Supp.* 463 (E.D.Pa.1979) the parties, though estranged, resided under the same roof. Upon legal advice the husband hired a private detective who placed a tap on the family phone. Reading the plain language of the statute, the Court concluded that the *Simpson* holding was wrong and that there was no need for statutory interpretation through dubious legislative history (at 469). The *Kratz* Court further listed several other factors such as expectation of privacy which were over looked in *Simpson. Kratz* at 472.

In *Gill v. Willer,* 482 *F.Supp.* 776 (W.D.N.Y.1980) the alleged paramour brought an action against his "friend's" husband for taping incoming calls (including Mr. Gill's). The Court specifically refused to follow *Simpson* and thus dismissed defendant's motion to dismiss. Also following the *Kratz* doctrine are *Pritchard v. Pritchard,* 732 *F.*2d 372 (4th Cir.1984) *Heyman v. Heyman,* 548 *F.Supp.* 1041 (N.D.Ill.1982), *Heggy v. Heggy,* 699 *F.Supp.* 1514 (W.D.Okla.1988), *Remington v. Remington,* 393 *F.Supp.* 898 (E.D.Pa.1975).

In 1989 the Eighth Circuit overruled the District Court in the *Kempf* case. *Kempf v. Kempf,* 868 *F.*2d 970 (8th Cir.1989) adding that Circuit to the list of those rejecting the *Simpson* doctrine.

Of course, much of the reasoning of the Federal Courts is of limited value when the issue is addressed at the state level. We are not concerned with the lack of Congressional intent to "invade the realm of the marital home" *Simpson, supra* at 808 (See Manual p. 6) a matter best left to the States. It is clear that the language of the N.J. Wiretapping Act contains no explicit exemption for any wiretapping by an aggrieved spouse. It is not the function of the courts to graft an exemption where the Legislature has seen fit not to provide one.

Wiretapping has been a recognized "evil" for quite some time. Justice Brandeis described

"The evil incident to invasion of privacy of the telephone is far greater than that involved in tampering with the mails. Whenever a telephone line is tapped, the privacy of both persons at the end of the line is invaded and all conversations between them upon any subject, and although proper confidential and privileged may be overheard..... As a means of espionage, writs of assistance and general warrants are but puny instruments of tyranny and oppression when compared to wire-tapping" *Olmstead v. United States,* 277 *U.S.* 438, 475–76, 48 *S.Ct.* 564, 571, 72 *L.Ed.* 944 (1928) Brandeis, J. dissenting)"

Given the potential harm from uncontrolled wiretapping, the Legislature could have explicitly created a home phone exemption had it chosen to do so. It did not. In point of fact, none of the "policy" reasons underlying *Simpson* exist in New Jersey.

One of the major concerns of the *Simpson* Court (and its progeny) was that a contrary result, making interspousal wiretapping a crime, would not only create a federal remedy for marital grievances, but would also "override interspousal immunity for personal torts accorded by the majority of the States. *Simpson,* supra at 806 (footnote 7). However, New Jersey case law is specifically to the contrary. *Tevis v. Tevis,* 79 *N.J.* 422, 400 *A.*2d 1189 (1979) not only abolished spousal immunity for intentional torts as well as for other forms of conventional tortious conduct, but also mandated that such matters be litigated as part of the matrimonial dispute under the "single controversy" doctrine.

Moreover, *Simpson* appears to overlook the essential purpose of the legislation. Given the inclusion of the civil remedy, including punitive damages, one must conclude that the rights of the victim are paramount; not the dubious property rights of the spouse to tape his own home phone. Whether the phone is tapped by a detective hired by the spouse or by the spouse himself really makes no difference to the person whose conversations are being recorded. Yet under *Simpson* the spouse could maintain an action against the private detective but not against the husband.

The invasion of privacy is just as severe, irrespective of the identity of the tapper. The trauma felt by the victim is just as great in either case. There is no reason whatsoever to allow spouses to perform non-consensual tortious acts against each other than there is to allow them to perform them against third parties. The right of privacy extends within the confines of the marital home. It is not somehow dissipated into the air upon the taking of marriage vows. Moreover since the instant case involves a claim for civil damages arising from a taping designed to "prove" marital infidelity, can it seriously be argued that a viable marital home or relationship exists. Rather, as is the norm in cases dealing with estranged spouses living under the same roof, the need for privacy is probably greater than under normal living conditions. A secretive taping of a spouse's calls under these conditions is an invasion in a most egregious fashion.

Here, the results of this invasion have had exactly the disastrous results the defendant envisioned. The wife has been emotionally shattered and lives in constant fear that somehow her husband will continue to monitor her activities. She experiences nightmares and a sense of extreme despair. She manifests symptoms of guilt identical to those experienced by many rape victims. The disclosure of the content of the tapes to family members has devastated her.

The statute mandates that not only compensatory damages but punitive damages be assessed. Given the fact that compensatory damages may be difficult to define, a shorthand liquidated damage claim is also established (*N.J.S.A.* 2A:156A–24). In the instant matter it is unclear how many days of taping were actually made. What is known however, is the amount the plaintiff has already spent and will continue to spend on psychological treatment. Accordingly compensatory damages are awarded in the amount of $10,000.00.

Punitive damages are to be assessed when the wrong doer's conduct is especially egregious. *Leimgruber v. Clar-*

*idge Assoc. Ltd.,* 73 *N.J.* 450, 454, 375 *A.*2d 652 (1977). To warrant the punitive damage award there must be an evil minded act accompanied by a wilful and wanton disregard of the rights of others. *Nappe v. Anschelowitz et. al.,* 97 *N.J.* 37, 48, 477 *A.*2d 1224 (1984). Nor is there a specific ratio between compensatory and punitive damages. They are assessed from the prospective of the defendant rather than of the plaintiff. *Cappiello v. Ragen Precision Indus.,* 192 *N.J.Super.* 523, 532, 471 *A.*2d 432 (App.Div.1984)

One of the purposes of punitive damage awards is to provide redress

"for the private wrong to the individual rather than the accompanying wrong to the public (and) may effectively supplement the Criminal Law in paroling the defendant." *Morris v. MacNab,* 25 *N.J.* 271, 281, 135 *A.*2d 657 (1957)

Given the egregious conduct of the defendant husband not only in the taping but then in the actual disclosure to third parties and the resultant harm to the wife, a punitive damage award in the amount of $50,000.00 is hereby awarded as well as counsel fees relating solely to this aspect of the case in the amount of $5,000.00.

The remainder of the issues dealing with child support, alimony and equitable distribution of property are dealt with in the accompanying letter decision.