Lawrence V. PASCALE, Tracy Pascale, Kenneth Flaherty and Afsaneth Flaherty, Plaintiffs,

v.

CAROLINA FREIGHT CARRIERS CORP. a corporate body, D.R. Smith, David Del Rossi, Paul Riordan, Robert Austell and James Carlton, Defendants.

Civ. A. No. 94–325(JCL).

United States District Court,
D. New Jersey.

Sept. 27, 1995.

John Michael Esposito, Sobel & Brown, East Hanover, NJ, for plaintiffs.

David Michael Hyman, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, Vincent A. Cino, Jackson, Lewis, Schnitzler & Krupman, Morristown, NJ, for defendants.

## OPINION

LIFLAND, District Judge.

Plaintiffs Lawrence Pascale and Kenneth Flaherty are former supervisors at defendant Carolina Freight Carrier Corporation's ("Carolina") Pine Brook, N.J. terminal. Plaintiffs Tracy Pascale and Afsaneh Flaherty are their wives. Individual defendant D.R. Smith is a Carolina manager. Both parties move for summary judgment pursuant to *Fed.R.Civ.P.* 56. For the reasons set forth below, the Court will grant plaintiffs' motion for summary judgment as to liability and deny defendants' motion.

## BACKGROUND

In the spring of 1993, Carolina had a theft problem at the terminal. A supply of Victo-ria's Secret perfume worth $4,500 was stolen. Defendant Smith suspected a dock worker named Fernando Marrerro of taking the perfume. Marrerro had been receiving an unusual number of emergency calls at work. He took these calls on one of the three telephones in Carolina's dispatch office and operations room near the loading dock. These phones were generally off-limits to loading dock employees; Marrerro's calls were an exception. *Ackerman Affidavit,* Exhibit A at 15, 22–24, 28, 30. Smith suspected that Marrerro was using these calls to arrange the theft of goods. Smith's suspicions were not allayed when he saw Marrerro drive off one night with a flat tire, rather than open the trunk of his car in view of a supervisor. *Id.* at 51–53.

Smith hired a private investigator named Richard Steepy to attach voice-activated tape recorders to defendant Carolina's phone system. On June 6, 1993, three tape recorders were installed, one for each of the three phones near the loading dock. The recorders were connected to the busboard by means of a Radio Shack wire. In this way, the recorders were connected to the phones in the dispatch and operations room. All outgoing and incoming calls to these three extensions were recorded off the busboard. Defendant Smith kept the recording equipment in his office closet. *Id.,* Exhibit B at 4, 5, 7, 9–11, 21, 23–26, 39–40; *Esposito Certification,* Exhibit B. A busboard is a personal distribution center for all the phone extensions for the system. It is supplied by the telephone company and distributes the calls throughout the building to each extension.

Defendants claim that on June 7, 1993, and on at least one other occasion, defendant Smith "spot checked" the tapes for Marrerro's voice. When Smith didn't hear Marrerro, he allegedly moved on to another portion of the tape. Defendants claim that a total of 61 conversations were intercepted and recorded, of which only six were employees' personal calls. *Id.,* Exhibits E–I.

Plaintiffs dispute these numbers and assert that defendants recorded far more calls than was necessary to achieve their objective. The telephone bills for the recorded phones

allegedly show a total of 293 intercepted calls, not 61. Plaintiffs claim that Marrerro did not work on June 6, the day defendants claim to have started the taping, and that Marrerro worked only a few hours over the next two days. *Esposito Certification,* Exhibit C. The parties further dispute when the taping system was installed and when it was removed. *Esposito Supplemental Certification,* Exhibit A at 39, 69.

The recording devices were discovered by plaintiffs in July, 1993. Pascale found them in Smith's closet while a workman was removing a carpet from Smith's office. *Pascale Certification,* ¶ 4. Pascale showed Flaherty the recorders; together they played back the tapes and heard themselves in conversation with their respective wives. *Id.* at ¶¶ 5–6; *Flaherty Certification,* ¶¶ 6, 8.

Pascale claims that his marriage became strained as a result of the recordings, as he and his wife often discussed personal matters over the telephone. He claims that he felt compelled to quit over this "breach of trust." *Pascale Certification,* ¶¶ 9–10. Flaherty eventually quit too. *Flaherty Certification,* ¶¶ 9, 12.

On January 24, 1994, plaintiffs filed suit under Title III of the Federal Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2521, and the New Jersey Wiretapping and Electronic Surveillance Act, N.J.S.A. 2A:156A–24.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56. The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). "This burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). All evidence submitted must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249, 106 S.Ct. at 2510.

Both 18 U.S.C. § 2520 and N.J.S.A. 2A:156A–24 provide that telephone calls may not be intercepted except pursuant to a court order. Victims may bring a civil action for damages against violators. There is an exception under federal and New Jersey law that allows for the monitoring of calls carried out with certain kinds of equipment in the ordinary course of business. This is known as the "telephone extension exception" or the "business extension exception."

### Federal Law Claim

18 U.S.C. § 2511(1)(a) is a provision of the federal anti-wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521. In conjunction with other statutory provisions, it creates civil and criminal liability for anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication."

18 U.S.C. § 2520 enables victims of violations of 18 U.S.C. § 2511(1)(a) to obtain appropriate equitable or declaratory relief, actual or statutory damages, punitive damages, litigation costs and reasonable attorney's fees.

The business extension exception covers monitoring by means of certain types of equipment, done in the ordinary course of business. 18 U.S.C. § 2510(4) defines the term "interception" as the "aural or other acquisition of the contents of any wire, electronic or oral communication through the use

of any electronic, mechanical or other device." § 2510(5) defines "electronic, mechanical or other device" as any apparatus which can be used to intercept a wire, oral, or electronic communication other than

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof,

(i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of business[.]

■ The defendant must establish two facts before this exception presents a viable defense: 1) either the phone company *or* the subscriber furnished the intercepting telephone or telegraph instrument, equipment, facility, or component; and 2) the equipment was used in the ordinary course of business. *See Deal v. Spears*, 980 F.2d 1153, 1157 (8th Cir.1992).

■ The recording of a telephone conversation alone constitutes an "aural ... acquisition" of that conversation. *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir.1994). Thus, Carolina's recording of the plaintiffs' phone conversations constitutes an "interception" under the Act unless the recordings were not acquired "through the use of any electronic, mechanical, or other device." The defendants contend that they did not record conversations "through the use of any electronic, mechanical, or other device" (as defined in the statute), because their recording technique qualifies under § 2510(5)(a)(i)'s business extension exception. To resolve this question, the Court must consider two issues: first, what device intercepted the conversations, and second, is this device a "telephone or telegraph instrument, equipment or facility, or any component thereof," the statutory predicate to defendants' enjoyment of the safe harbor created by § 2510(5). Essentially, the Court must characterize the defendants' recording device, a question of law appropriate for summary judgment on this record.

*What device intercepted the conversations?*

■ The defendants argue that the intercepted conversations were recorded directly off the busboard (a component of Carolina's telephone facility), rendering the busboard the intercepting device. If the Court were to accept this contention, the interception occurred with equipment furnished by the telephone company, partially satisfying the requirements of § 2510(5)(a)(i). The plaintiffs respond that a busboard is not an acquiring mechanism, and that the interception occurred when the Radio Shack wire seized the call and transmitted it to the Radio Shack intercepting equipment. If so, the telephone company did not furnish the intercepting equipment, and the defendants cannot rely upon the "furnished ... by a provider of wire ... service" language of § 2510(5)(a)(i).

While characterization in the context of the business extension exception appears to be a question of first impression in the Third Circuit, a number of other courts have characterized electronic interception devices similar to that used by Carolina. In *Epps v. St. Mary's Hospital*, 802 F.2d 412, 415–416 (11th Cir.1986), calls coming into or going out of a dispatch console were automatically recorded onto a double-reel tape recorder. The court held that the intercepting device was the dispatch console, rather than the recording equipment. Similarly, *United States v. Harpel*, 493 F.2d 346 (10th Cir.1974), held that where a call is recorded by attaching a suction cup to a telephone receiver and connecting it to a tape recorder, the receiver is the intercepting device, not the recorder. The court explained:

A recording device placed next to, or connected with, a telephone receiver cannot itself be the 'acquiring' mechanism. It is the receiver which serves this function— the recorder is a mere accessory designed to preserve the contents of this communication. This interpretation comports squarely with the clear distinction drawn between 'intercepting' and 'recording' under 18 U.S.C. § 2518(8)(a), which deals with judicially authorized interceptions.... We therefore conclude that the tape recorder in question cannot constitute

the intercepting mechanism when used, as it is argued here, connected to a telephone receiver.

*Id.* at 350. Under the approach of the 10th and 11th Circuits, the intercepting device here would be the busboard since it received the calls. The Radio Shack wire and recorders would merely be "accessories" intended to preserve the intercepted communications.

However, this analysis has not received universal acceptance throughout the circuits. In *Deal v. Spears,* 980 F.2d 1153 (8th Cir. 1992), the court considered a recording device (also purchased at Radio Shack) installed on an extension phone and programmed to record all calls automatically. Rejecting the reasoning in *Epps,* the court held that the recording device was the intercepting device for purposes of § 2510(5)(a)(i) because without it, the communications could never have been heard. But for the recording device, no interception would have occurred. *Id.* at 1157–58. *See also Sanders v. Robert Bosch Corp.,* 38 F.3d 736, 740 n. 8 (4th Cir.1994) (rejecting *Epps* and instead holding that voice logger, not extension telephone lines installed by BellSouth, was intercepting device); *United States v. Murdock,* 63 F.3d 1391 (6th Cir.1995) (Radio Shack recording equipment attached to two extension phones and used to record phone calls for three months not within business extension exception).

■ The Court is persuaded by the reasoning in *Deal,* and holds as a matter of law that the intercepting devices were the Radio Shack recorders, rather than the busboard.[1] Critical to this conclusion is that without the tape recorders, the defendants could not have intercepted the communications. No tangible record of the spoken words would exist because the busboard is merely a distribution center for all the phone extensions on

the system, sending calls to the proper locations throughout the building. *See* Hearing Transcript, pp. 5:12–10:8, 12–13 (February 27, 1995). Accordingly, without the recorders the defendants could never have discovered the content of the communications. This essential nexus between the recording devices and the permanent record of the conversations convinces the Court that the recorders were more than merely accessories "designed to preserve the contents of the communication." *Harpel,* 493 F.2d at 350. In effect, the preservation was the interception.

Since the Radio Shack products were the intercepting devices, defendants cannot demonstrate that the interception occurred via an instrument "furnished ... by a provider of wire or electronic communication service...."

But this does not yet sink the defendants' ship before reaching the safe harbor of the business extension exception. They may still avail themselves of the exception if they can establish that the tape recorders, which defendants furnished for connection to their telephone service facilities, as the second clause of § 2510(5)(a)(i) allows,[2] are "telephone or telegraph instrument[s], equipment, or facilit[ies]...." § 2510(5)(a)(i).

*Were the recorders telephone instruments or equipment?*

■ In *Williams v. Poulos,* 11 F.3d 271 (1st Cir.1993), the court held that an employer's interception of employee telephone calls did not come within the business extension exception. A custom-made monitoring system consisting of " 'alligator clips attached to a microphone cable at one end' and an interface connecting [a] microphone cable to a VCR and video camera' on the other" was held not to be a "telephone or telegraph

---

1. The plaintiffs argue that the Radio Shack wire, which transmitted calls from the busboard to the playback recorders, was the intercepting device. The Court rejects this position because a wire is not a "device." Moreover, as discussed below, interception occurred when the conversations were permanently memorialized, a feat impossible for the wire to perform.

2. The "or furnished by such subscriber ..." language was added to § 2510(5)(a)(i) when Congress enacted the Electronic Communications Privacy Act of 1986. Pub.L. 99–508 § 101(a)(4). This legislation amended the 1968 Wiretapping Act to "update and clarify federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S.Rep. No. 99–541, 99th Cong., 2d Sess. at 1, *reprinted at* 1986 U.S.C.C.A.N. 3555.

instrument, equipment or facility, or a component thereof." *Id.* at 280. *Sanders v. Robert Bosch Corp.,* 38 F.3d 736 (4th Cir. 1994), in which the Court appraised a less exotic telephone monitoring device, reached the same conclusion. As a security precaution, the defendant had installed a "voice logger", an eight-channel reel-to-reel tape recorder which automatically recorded all conversations on the telephone lines to which it was attached. Seven of the eight channels were connected to telephone extensions installed by BellSouth, and the eighth channel continuously indexed the time and date of calls. *Id.* at 738. While Robert Bosch Corporation, the subscriber, furnished the voice logger and connected it to the telephone facility provided by BellSouth, these necessary conditions for application of the business extension exception were not sufficient. Citing *Poulos,* the court reasoned that the voice logger was not a "telephone or telegraph instrument, equipment or facility or a[ ] component thereof" because it "in no way further[ed] the plant's communication system." *Id.* at 740.

*Poulos* and *Robert Bosch Corp.* are persuasive, and convince the Court that the recorders here are not "telephone or telegraph instrument[s] . . . ." While these instruments are less unusual, and the characterization question closer than in *Poulos,* the fact that the devices do not further Carolina's communications system is critical. *See id.* There is no suggestion that these instruments had a positive impact on efficiency, clarity, cost, or any other factor by which one would measure the effects on a communications system. Indeed, tape recorders are used in a myriad of ways wholly unrelated to telephonic communications.

This conclusion does not conflict with *James v. Newspaper Agency Corp.,* 591 F.2d 579 (10th Cir.1979), which implicitly held that a telephone monitoring device installed by Bell for the defendant was a "telephone or telegraph instrument. . . ." Since the telephone company furnished and installed the monitoring system in the regular course of its business, it was reasonable to consider the device a telephone instrument within the business extension exception. In the instant case, Carolina purchased the intercepting devices from Radio Shack, rather than from its telephone service supplier, negating the conclusion implicitly drawn in *Newspaper Agency.* See also *Robert Bosch Corp.,* 38 F.3d at 740 n. 9 ("[W]e believe that evidence as to whether such equipment is sold by the telephone company in ordinary [sic] course of its business is nevertheless relevant as at least some indication of whether the equipment in question is 'telephone or telegraph . . . equipment. . . .' ").

Because the defendants fail to satisfy the business extension exception's threshold requirement—that the intercepting devices be telephone instruments, equipment, facilities, or components—the Court need not address whether the interception occurred in the ordinary course of business. The Court holds as a matter of law that defendants used "electronic, mechanical, or other device[s]" to accomplish their interception, in violation of 18 U.S.C. § 2510 *et. seq.*

### New Jersey Law Claim

■ The New Jersey Electronic Surveillance Act, N.J.S.A. 2A:156A–1, *et seq.,* was enacted in 1969 and largely followed the federal statute. *State v. Minter,* 116 N.J. 269, 561 A.2d 570 (1989). Both define "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electric, mechanical, or other device." N.J.S.A. 2A:156A–2; 18 U.S.C. § 2510(4). Moreover, the New Jersey Legislature amended the statute in 1993 to include language virtually identical to the business extension exception described in 18 U.S.C. § 2510(5). *See* N.J.S.A. 2A:156A–2(d), amended by L.1993, c. 29, § 1, eff. Jan. 28, 1993. As one court has noted: "the legislature's intent . . . was simply to follow the federal act." *State v. Fornino,* 223 N.J.Super. 531, 539, 539 A.2d 301 (App.Div.1988).

Since New Jersey courts have looked to constructions of the federal act when interpreting the New Jersey wiretap statute, *see, e.g., State v. Lane,* 279 N.J.Super. 209, 652 A.2d 724 (App.Div.1995) and *M.G. v. J.C.,* 254 N.J.Super. 470, 603 A.2d 990 (Ch.Div.1991), the Court will rely upon the cases interpreting the federal business extension exception.

For the reasons outlined above, the Court holds as a matter of law that the defendants violated the New Jersey Wiretapping and Electronic Surveillance Control Act. N.J.S.A. 2A:156A–1.[3]

---

**3.** Plaintiffs argue in their brief that the New Jersey wiretap statute is more restrictive, i.e. affords additional protection to its citizens. The Court does not address this contention since it holds in favor of the plaintiffs even if New Jersey law is interpreted as no more restrictive than the federal law. Similarly, the Court does not address the plaintiffs' argument that the defendants had a duty to minimize.