**UNITED STATES of America, Appellee,**

v.

**Ramon RIVERA, Defendant, Appellant.**

No. 88–1398.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1989.

Decided April 10, 1989.

in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count three charged, "acting in concert and in furtherance of [the count one conspiracy with Azulay and Chutjian] [to] knowingly and intentionally distribute a quantity of cocaine" on or about February 11, 1987, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Aiding and Abetting), and count four, "acting in concert and in furtherance of [the count one conspiracy with Azulay and Chutjian] [to] knowingly and intentionally distribute 500 grams or more" of a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Aiding and Abetting). On the afternoon of the first day of its deliberations the jury reported that it had agreed on counts one and four, but was still debating count three, and was willing to return and continue in the morning. The court asked the government if it would be content to drop count three if there were convictions on one and four. The government agreed. The defendant was not asked whether he agreed or not. Upon the jury's returning guilty verdicts on counts one and four, the following order was entered dismissing count three.

This action is taken for the reason that Ramon Rivera has been convicted of Counts I and IV of the indictment and it is not in the interest of justice to further prosecute Count III of the indictment.

After Rivera was sentenced on counts one and four it was discovered that the indictments had been returned by a grand jury whose term had expired, and were invalid. At defendant's request the convictions were vacated. Defendant was re-indicted; count one being the same, except to add Ismael Narvez, also known as "Freddy," as another named conspirator. Count three was the same as before, except to be renumbered count two, with count four, in the same terms as before, becoming count three. Defendant went to trial and was duly convicted on all three counts. On counts one and two he was sentenced to ten years each, and on count three, seven years, all to be served concurrently. In addition, he was sentenced to four years supervised release on counts two and three,

George J. Skelly with whom Thomas J. Dougherty, by Appointment of the Court, Lori Weiner Lander and Skadden, Arps, Slate, Meagher & Flom, Boston, Mass., were on brief, for defendant, appellant.

Deborah A. Ramirez, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for U.S.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

As the result of an undercover investigation aimed at reaching higher-ups, defendant Ramon (Manny) Rivera was tried on three counts of a four count indictment, count one charging conspiracy with John H. Azulay and Martin A. Chutjian, and others presently unknown, until on or about March 31, 1987, to "possess with intent to distribute a quantity of cocaine"

with a special assessment of $50 on each count. With new counsel, he appeals.

■ Defendant asserts that double jeopardy barred count two. The invalidity of count three of the first indictment did not destroy defendant's right to claim double jeopardy thereunder. *Benton v. Maryland*, 395 U.S. 784, 797, 89 S.Ct. 2056, 2064, 23 L.Ed.2d 707 (1969). We have no doubt that he had such a right. On the government's claim to re-prosecute, one need only ask what the court would have said if counts one and four had not been vacated and the government had come back the next week and said it had decided to retry count three after all. It is no better off because counts one and four collapsed. The government made what turned out to be a poor concession, not a conditional one.

The government argues that, in effect, what occurred was a mistrial. We think this too favorable, but even were it correct, it was the type of mistrial that does not, in the absence of consent, permit reactivation. A mistrial declaration that is not consented to by the defendant must be required by "manifest necessity" or the "ends of public justice," or it is a bar to further prosecution. *See Illinois v. Somerville*, 410 U.S. 458, 468–71, 93 S.Ct. 1066, 1072–74, 35 L.Ed.2d 425 (1973). There was no possible necessity here.

■ The more serious question is whether defendant waived the defense of double jeopardy by not pleading it. Double jeopardy is a personal defense that can be waived. *United States v. Broce*, —— U.S. ——, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). We note a number of cases in other circuits indicating it may be waived simply by not pleading it. *E.g., Paul v. Henderson*, 698 F.2d 589, 592 (2d Cir.) (citing cases from seven circuits), *cert. denied*, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983). Most of those cases, however, are dicta, and we find none that persuasively addresses the principle that a waiver of a constitutional right must be "voluntary, knowing, [and] intelligent." *United States v. Christian*, 571 F.2d 64, 69 (1st Cir.1978). There is no evidence here of knowing. Since it would be an absolute defense, plain error is clearly applicable.

The government argues that defendant's letting count two go to trial was a tactical choice. It says that the presence of count two required it to call Miller, a government informant, as a witness, and that from defendant's standpoint he was the most vulnerable of the government witnesses, and might prove, net, to be an advantage to defendant. This is a thin reed. Just as we reject defendant's claim, post, that the presence of count two required him, the defendant, to take the stand, neither would the government have to call Miller. We do not accept the government's claim of conscious choice. The conviction on count two must be vacated.

■ As to counts one and three, defendant made no objections to the charge, but we are now inundated with complaints. We recognize, of course, that a defendant may assert plain error, but we realize, too, that plain error with respect to a matter readily remediable, if not a trap for the court (advertent or inadvertent), gives a defendant a free second bite at the cherry, and is to be narrowly limited. *See United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). An error is not plain unless it sufficiently appears that it would likely have affected the outcome. *See United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). For this we must review the record.

Briefly, the facts that the jury could have found are these. On February 11, 1987, Drug Enforcement Agents Assarian and Alexander purchased one pound of cocaine from Martin Chutjian. Agent Alexander and an informant named Miller observed a man they identified as defendant Rivera deliver the cocaine to Chutjian. On March 30, 1987, Assarian and Alexander bought two kilograms of cocaine from Chutjian. After this transaction, they arrested Chutjian and asked him to contact his source of supply. Chutjian complied, and arranged a meeting at a restaurant. Subsequently, Alexander, Assarian, and Chutjian met defendant at the restaurant

and discussed with him the 1–pound purchase, and the 2–kilo purchase, in such terms that it could have been inferred that he had been the supplier, and made plans for a future 7–kilo purchase. Defendant was then arrested.

■ Unhappily, during its charge, the court used instructions furnished by the government addressed to offenses different from those in the indictment. It does not necessarily follow that defendant was harmed. As we said in *United States v. Doherty*, 867 F.2d 47, 58 (1st Cir.1989),

> An erroneous instruction on an element of the offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element.

Starting with count one, this count charged, and the court correctly quoted it, a conspiracy "to possess cocaine with intent to distribute it." Later, however, the court spoke in terms of a conspiracy to distribute, and made no mention of possession. Defendant points out that these are distinct offenses. This, of course, is true. But how, as, indeed, the evidence in fact fully illustrates, can one conspire to distribute without contemplating possession with intent? The evidence of defendant's possession was inescapably of a piece with the distribution, and would either be rejected or accepted as a whole. Hence the jury was correctly told what the indictment charged, and later, in effect, what the government need show. Defendant was not harmed by the court's having spoken at one point in terms of distribution. *Cf. United States v. Runnels*, 833 F.2d 1183 (6th Cir.1987); *United States v. Solis*, 841 F.2d 307 (9th Cir.1988). We do not agree with defendant that an element of the government's evidentiary burden was omitted, as in *United States v. Ochs*, 842 F.2d 515 (1st Cir.1988). While *Solis* "makes clear [that] possession is not distribution," the reverse does not necessarily follow, and did not here.

■ An incipiently more substantial mixup occurred on counts two and three—the court charging that they were the same, except noting that as to count three there was the additional 500 gram requirement. But as to these counts the court incorrectly described the indictment, saying that it charged "possessing cocaine with intent to distribute," rather than the distribution itself. It then discussed the elements of possession with intent. Had matters stopped there, defendant would have had a serious complaint, but, fortunately for the government, they did not. The jury had difficulty and later sought clarification as to whether it had to find that defendant was present when the February 11 distribution occurred. In response, while the court repeated that defendant was charged with possession with intent to distribute, it then specifically stated that, whether present or not, the jury must find that he participated in the distribution. Whether the jury's question had been precipitated by reading the indictment, which had gone to the jury room, does not, of course, appear, but that proof of participation in the actual distribution was part of the government's burden was the court's last, and positive, requirement, that could not have been misunderstood.

The Government's theory was that he was the person, and the evidence that the Government put forward, it argued, suggests to you that he was the person who appeared at the Ground Round on February 11th and transferred a package to either Mr. Miller or Mr. Chutjian, I can't remember which, and that that package contained cocaine, and that that was the same package that is now upstairs in the jury room. That was the Government's theory.

What the Government, as I say, has to prove is that he participated in the distribution of cocaine on that day.

The Government also suggested to you, although, this was its primary theory that he was there, that he acknowledged participating in the distribution of cocaine on that day as well as on the 30th, in the conversations at the Hong Kong Restaurant on March 30.

Whether he did or not is for you to find. I think the evidence is thin of the

conversations that would suggest that he distributed. But you will have to determine whether he, if you find that he wasn't there, whether he, in fact, participated in the distribution of cocaine on February 11th.

If you find that he did participate in the distribution of cocaine, knowingly and intentionally, then you may find him guilty of Count 2.[1]

In addition, the court, in charging with respect to aiding and abetting, again emphasized the government's burden as to distribution.

Now, note that the indictment charges that defendant and others acting in concert, i.e., together, were distributing cocaine. You will note when you look at the indictment that it refers not only to Title 21, but also to Title 18, Section 2, which is another statute that says that somebody who aids and abets someone who is carrying out a criminal offense is as guilty as the person who does it.

It says, in general, that a person may be found guilty, even though he does not himself do every act that constitutes a criminal offense, if he either assists somebody else or gets somebody else to commit it. So if a person is an accomplice, if he willfully with an intent to violate the law, participates in the commission of a crime, he may be found guilty as an aider and abettor.

So if you find beyond a reasonable doubt that the defendant in some way associated himself with the illegal *distribution* of cocaine with sales to the agents as something that he wanted to bring about, the Government doesn't have to prove that he was involved in every stage of this transaction. It is enough if the Government proves that he participated at some stage, provided it also shows that he did it with knowledge of the results to be achieved and with the intent to bring about that result. (Emphasis supplied.)

This was precisely correct.

■ It was also what the evidence showed. Defendant quotes our opinion in

*United States v. Campa,* 679 F.2d 1006, 1010 (1st Cir.1982) ("the government must prove some affirmative participation by the aider and abettor"), and claims the conviction cannot stand because the evidence presented to the jury "was devoid of any concrete evidence of active participation by [defendant]." There was amply such. Agent Assarian testified that when he requested Chutjian to contact the source of the cocaine, Chutjian dialed a series of numbers consistent with contacting a telephone message "beeper;" that Chutjian engaged in a conversation with someone he identified as "Manny" with whom he arranged to meet at the Hong Kong restaurant and whom he requested to bring a "piece" of cocaine for himself; that defendant was at the Hong Kong restaurant at the appointed time; had in his possession a "beeper" displaying the telephone number of the pay phone from which Chutjian had placed his call; had a "piece" of cocaine in the car he was driving, and, Agent Assarian testified, made reference to the quantity, quality, and origin of the cocaine that Assarian had just received and promised to deliver cocaine of the same quality in the future. Clearly the jury must infer that defendant participated in the distribution of the cocaine delivered to Assarian if it believed Assarian at all.

■ On the assumption that count two was barred by double jeopardy, defendant advances a number of reasons why presenting it to the jury improperly prejudiced him with respect to count three. All, however, fail. In the first place, quite apart from the crime of the substantive offense, a sale on February 11 was an event properly shown in connection with the count one conspiracy. The termination of former count three, now count two, without decision, was not a finding that defendant had not participated in that sale; it merely meant he could no longer be convicted for the substantive offense. Conspiracy and the substantive crime are two separate offenses, for which a defen-

---

1. As we said before, the court's instructions, further, tied counts two and three together.

dant can be separately convicted. *Iannelli v. United States*, 420 U.S. 770, 777–78, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975). There is no reason to hold that the February 11 activity could not still be considered in connection with the former.

Nor do we accept the contention that the inclusion of count two was more broadly prejudicial because it required defendant to take the stand to testify to an alibi, the subsequent refutation of which may have carried over to hurt him in respect to count three. Defendant did not take the stand before; it was his voluntary choice to change his tactics. Moreover, he did not restrict his testimony to count two; he also testified to an alibi as to count three. He is not now entitled to the best of both worlds by claiming plain error affecting count three.

▇▇ There is one matter as to which defendant did save his rights, the introduction of testimony of a Shawn Proulx that Proulx regularly purchased cocaine from a cousin of defendant's, Freddy (of count one), and, when the cousin was unavailable, from defendant. The court determined that the evidence showed "both an opportunity to get [cocaine] and intent to distribute it ... [and] a plan to distribute," and admitted it under Fed.R.Evid. 404(b). Defendant claims the government had no need to prove either of these issues because they were not disputed, but we know of no concession. *Cf. United States v. Renteria*, 625 F.2d 1279, 1282 (5th Cir.1980) (evidence of uncharged cocaine possession admissible in conspiracy case "although in the end the defense might choose not to contest the issue of intent"). Further, defendant blows hot and cold. He argues that proof of small sales was "not particularly probative" of the ability to acquire large quantities, and at the same time argues prejudice because "the jury may have believed that the charged offenses were nothing more than Mr. Rivera doing what he always did."

It might have been wiser not to go into the Proulx items, and if the case had been close, possibly they might have given us pause. However, if we accept defendant's argument that small sales were not partic-

ularly probative of big dealing (one and four pounds, with plans for much larger amounts), by the same token they were not particularly harmful. And, in fact, it already appeared that defendant occasionally made small sales, the evidence showing a "piece" in his car in response to Chutjian's request on March 30. And even were we to find the admission error, we would not find it, on the record as a whole, prejudicial to a fair trial.

*Affirmed in part; vacated in part.*