279 N.J. Super. 209 (1995)
652 A.2d 724
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ISAAC LANE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 22, 1994.
Decided January 26, 1995.
*212 Before Judges MICHELS, STERN and HUMPHREYS.
Isaac Lane, appellant, pro se.
*213 Deborah T. Poritz, Attorney General, attorney for respondent (Arthur S. Safir, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Isaac Lane was convicted of aggravated assault, a crime of the second degree, in violation of N.J.S.A. 2C:12-1b(1) (Fifth Count) and unlawful possession of a handgun without first having obtained a permit to carry the same, a crime of the third degree, in violation of N.J.S.A. 2C:39-5b (Seventh Count). The trial court committed defendant to the custody of the Commissioner of the Department of Corrections (Commissioner) for a term of four years and assessed a $30 Violent Crimes Compensation Board penalty for his conviction for unlawful possession of a weapon under the Seventh Count. In addition, the trial court committed defendant to the custody of the Commissioner for a term of nine years with a four and one-half year period of parole ineligibility and assessed a $30 VCCB penalty for defendant's conviction for aggravated assault under the Fifth Count. This sentence was to be served consecutively to the sentence imposed under the Seventh Count. Defendant appeals.
Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentences on the following grounds set forth in his brief:
POINT I: INEFFECTIVE ASSISTANCE OF COUNSEL DEPRIVED THE DEFENDANT OF A FAIR TRIAL IN VIOLATION OF THE SIXTH AMEND., U.S. CONST., ART. I, SECTION 10, N.J. CONST. (Not Raised Below).
POINT II: THE CHARGE OF AGGRAVATED ASSAULT AND THE SECOND PROSECUTION VIOLATED THE DOCTRINE OF DOUBLE JEOPARDY AND THE CONCEPT OF COLLATERAL ESTOPPEL EMBODIED THEREIN, U.S.C.A. CONST. AMENDS. 5, 14; N.J.S.A. CONST. ART. 1, PAR. 1. (Not Raised Below).
POINT III: THE STATE FAILED TO DISPROVE THE DEFENSE AND ALSO FAILED TO PROVE THE ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT.

*214 POINT IV: THE JURY CHARGE FAILED TO ADEQUATELY INSTRUCT THE JURY OF THE STATE'S BURDEN AND THE PROPER APPLICATION OF THE DIMINISHED CAPACITY DEFENSE TO THE OFFENSES.
POINT V: THE COURT ERRED IN EXCLUDING EVIDENCE IN THE FORM OF TAPED CONVERSATIONS OF THE DEFENDANT, THE VICTIM AND OTHERS.
POINT VI: THE NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED THE DEFENDANT OF A FAIR TRIAL.
POINT VII: THE SENTENCE IMPOSED BY THE COURT WAS EXCESSIVE AND CONTAINED A MINIMUM PERIOD OF PAROLE INELIGIBILITY GREATER THAN THAT REQUIRED BY LAW WITHOUT PROPERLY WEIGHING THE AGGRAVATING AND MITIGATING FACTORS.
POINT VIII: THE CUMULATIVE ERRORS OF THE TRIAL COURT DEPRIVED THE DEFENDANT OF A FAIR TRIAL.
We have carefully considered these contentions and all of the supporting arguments advanced by defendant, and find, with the exception of the order directing defendant to serve his sentences and the claimed ineffective assistance of counsel, that they are without merit and warrant only the following discussion in a written opinion. R. 2:11-3(e)(2).

I.
Defendant contends for the first time on appeal that his retrial for second-degree aggravated assault under the Fifth Count, after reversal of his earlier conviction on this charge, constituted an infringement of the Federal and State Constitutional double jeopardy prohibitions and also violated the collateral estoppel doctrine. We disagree.
The Double Jeopardy Clause "does not bar reprosecution of a defendant whose conviction is overturned on appeal." Justices of Boston Mun. Ct. v. Lydon, 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311, 324 (1984). "[I]t is consistent with the guarantee against double jeopardy to retry a defendant who has succeeded in obtaining reversal of his conviction based on trial errors." State v. Koedatich, 118 N.J. 513, 519, 572 A.2d 622 (1990); see also N.J.S.A. 2C:1-9c.
*215 Further, the defense of double jeopardy must be raised by pretrial objection. R. 3:10-2. Likewise, the doctrine of collateral estoppel may not be raised for the first time on appeal in the absence of a demonstration of fundamental unfairness or manifest injustice. State v. Davis, 67 N.J. 222, 224-26, 337 A.2d 33 (1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); see also State v. Ebron, 61 N.J. 207, 216, 294 A.2d 1 (1972); State v. Esposito, 148 N.J. Super. 102, 105-08, 371 A.2d 1273 (App.Div.), certif. denied, 74 N.J. 260, 377 A.2d 669 (1977).
Procedurally, defendant failed to object to the retrial on double jeopardy and collateral estoppel grounds prior to trial, and is, therefore, now barred from raising this objection. R. 3:10-2. Importantly, the reversal of defendant's conviction for aggravated assault was based upon trial error, namely, erroneous jury instructions, not on a lack of evidential support for his conviction. The reversal of defendant's conviction for trial error does not preclude the retrial of defendant for the same offense.

II.
Defendant also contends that the State failed to prove beyond a reasonable doubt the essential elements of the aggravated assault charged in the Fifth Count. He argues essentially that the verdict with respect to the aggravated assault charge was against the weight of the evidence.
Preliminarily, we note that defendant's contention that the jury's verdict was against the weight of the evidence is not properly cognizable on this appeal. Defendant failed to move for a new trial on this ground as required by R. 2:10-1. See State v. Ross, 249 N.J. Super. 246, 253, 592 A.2d 291 (App.Div. 1991); State v. Perry, 128 N.J. Super. 188, 190, 319 A.2d 505 (App.Div. 1973), aff'd, 65 N.J. 45, 319 A.2d 474 (1974). Furthermore, even if we ignore this fundamentally sound principle of appellate review and consider the merits of defendant's contentions, we are convinced from our study of the record that there was sufficient credible *216 evidence on the record from which the jury could find defendant guilty beyond a reasonable doubt of second degree aggravated assault in violation of N.J.S.A. 2C:12-1b(1). In sum, the verdict in this regard was amply supported by the State's proofs and was not a miscarriage of justice under the law. State v. Carter, 91 N.J. 86, 96, 449 A.2d 1280 (1982); State v. Sims, 65 N.J. 359, 373-74, 322 A.2d 809 (1974).

III.
Defendant also contends that the trial court failed to adequately instruct the jury on the State's burden of proof and the proper application of his diminished capacity defense. We disagree.
It is fundamental that "[a]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988); see also State v. Grunow, 102 N.J. 133, 148-49, 506 A.2d 708 (1986). When evaluating a challenge to a jury charge, it is also well settled that the charge should be examined as a whole in order to determine its overall effect. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973). Consequently, portions of a charge which are alleged to be erroneous cannot be dealt with in isolation. As long as a trial court succeeds in communicating the law to the jury, even if it does so with less than "neat precision," the charge should stand. State v. Freeman, 64 N.J. 66, 69, 312 A.2d 143 (1973).
Applying these settled principles here, the trial court properly instructed the jury as to defendant's diminished capacity defense. The trial court's charge followed the Model Jury Charge entitled "Evidence of Mental Disease or Defect Based on 3rd Circuit Decision in Humanik v. Beyer." Model Jury Charges, Criminal, (Approved November 6, 1989). As that title indicates, the Model Jury Charge is in compliance with Humanik v. Beyer, 871 F.2d 432 (3d Cir.1989), cert. denied, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

*217 IV.
Defendant contends that the trial court erred in excluding taped telephone conversations involving his victim-wife and former mother-in-law. Defendant argues essentially that evidence of these conversations was properly admissible to show his state of mind, prior inconsistent statements by his wife and his wife's prior extra-marital affairs.
We are satisfied that the evidence was properly excluded under the New Jersey Wiretapping and Electronics Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq., which was enacted in 1969. L. 1969, C. 409. Although the New Jersey Wiretapping Act, was modeled after the federal legislation, see State v. Fornino, 223 N.J. Super. 531, 544, 539 A.2d 301 (App.Div.), certif. denied, 111 N.J. 570, 546 A.2d 499 (1988), cert. denied, 488 U.S. 859, 109 S.Ct. 152, 102 L.Ed.2d 123 (1989), it is more restrictive in some respects. See State v. Catania, 85 N.J. 418, 436-39, 427 A.2d 537 (1981). Nevertheless, both provide generally that telephone calls and other wire or oral communications may not be "intercepted except pursuant to court order." Fornino, supra, 223 N.J. Super. at 544, 539 A.2d 301; see also N.J.S.A. 2A:156A-3 and N.J.S.A. 2A:156A-8; 18 U.S.C. § 2516.
N.J.S.A. 2A:156A-3 provides:
Except as otherwise specifically provided in this act, any person who:
a. Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication; or
b. Willfully discloses or endeavors to disclose to any other person the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication; or
c. Willfully uses or endeavors to use the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire or oral communication;
shall be guilty of a misdemeanor and shall be fined not more than $10,000.00 or imprisoned not more than 5 years, or both. Subsection b and c of this section shall not apply to the contents of any wire or oral communication, or evidence derived therefrom, that has become common knowledge or public information.
*218 N.J.S.A. 2A:156A-2 defines the term "intercept" as "the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device." Thus, a party to a telephone conversation who records that communication is deemed to "intercept" it under the New Jersey Wiretapping Act. State v. Minter, 116 N.J. 269, 275, 561 A.2d 570 (1989).
There are, however, exceptions to the reach of our statute. N.J.S.A. 2A:156A-4, in pertinent part, provides:
It shall not be unlawful under this act for:
....
d. A person not acting under color of law to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception unless such communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act. The fact that such person is the subscriber to a particular telephone does not constitute consent effective to authorize interception of communications among parties not including such person on that telephone. (Emphasis added).
Here, the taped telephone conversations were obtained by defendant without his ex-wife's consent or the consent of his former mother-in-law. With the exception of one conversation between defendant, his ex-wife and his former mother-in-law, defendant was not a party to these conversations. Although the taping of one's own telephone conversations with another is not an intercept within the meaning of the statute, State v. Gora, 148 N.J. Super. 582, 590-91, 372 A.2d 1335 (App.Div.), certif. denied, 74 N.J. 275, 377 A.2d 679 (1977), it is unlawful and a violation of New Jersey's Wiretapping Act to tape the telephone conversations of others, including one's spouse without consent, when the spouse or person taping the conversation is not a party to the conversation. There is no exception under the New Jersey Wiretapping Act for intentional, unconsented wiretapping or electronic surveillance of conversations, including those involving a spouse over one's own telephone line when the latter is not a party to the conversation. See M.G. v. J.C., 254 N.J. Super. 470, 477, 603 A.2d 990 (Ch.Div. *219 1991). Our holding in this regard is supported by sound federal court decisions interpreting the Federal Omnibus Crime Control Act and Safe Streets Act under 18 U.S.C.A. § 2510 et seq. See Thompson v. Dulaney, 970 F.2d 744 (10th Cir.1992); Kempf v. Kempf, 868 F.2d 970 (8th Cir.1989); Pritchard v. Pritchard, 732 F.2d 372 (4th Cir.1984); United States v. Jones, 542 F.2d 661 (6th Cir.1976); White v. Weiss, 535 F.2d 1067 (8th Cir.1976); Heggy v. Heggy, 699 F. Supp. 1514 (W.D.Okl. 1988); Nations v. Nations, 670 F. Supp. 1432 (W.D.Ark. 1987); Flynn v. Flynn, 560 F. Supp. 922 (N.D.Ohio 1983); Heyman v. Heyman, 548 F. Supp. 1041 (N.D.Ill. 1982); Kratz v. Kratz, 477 F. Supp. 463 (E.D.Pa. 1979). Contra, see Anonymous v. Anonymous, 558 F.2d 677 (2d Cir.1977); Simpson v. Simpson, 490 F.2d 803 (5th Cir.), reh'g denied, 493 F.2d 664, cert. denied, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); Lizza v. Lizza, 631 F. Supp. 529 (E.D.N.Y. 1986). Thus, except for the conversation to which defendant was a party with his ex-wife and his former mother-in-law, which was not an unlawful interception under the New Jersey Wiretapping Act, see N.J.S.A. 2A:156A-4; see also Gora, supra, 148 N.J. Super. at 590-91, 372 A.2d 1335, the other taped conversations were unlawful.
The New Jersey Wiretapping Act is designed to protect a high degree of privacy in telephone conversations. Minter, supra, 116 N.J. at 276, 561 A.2d 570; State v. Mollica, 114 N.J. 329, 342, 344, 554 A.2d 1315 (1989); State v. Sugar, 100 N.J. 214, 225-29, 495 A.2d 90 (1985); State v. Fornino, supra, 223 N.J. Super. at 544, 539 A.2d 301. The remedy provided by the Act for illegal recording of a communication is suppression of the evidence. N.J.S.A. 2A:156A-21 expressly provides that:
Any aggrieved person in any trial, hearing, or proceeding in or before any court or other authority of this State may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that:
a. the communication was unlawfully intercepted;
* * * * * * * *
... If the motion is granted, the entire contents of all intercepted wire, electronic or oral communications obtained during or after any interception which *220 is determined to be in violation of this act under subsections a., b., c. of this section, or evidence derived therefrom, shall not be received in evidence in the trial, hearing or proceeding.
The suppression of evidence obtained in violation of the New Jersey Wiretapping Act is an appropriate remedy for violating the statute. See Sugar, supra, 100 N.J. at 226-27, 495 A.2d 90. Suppression is also the remedy for violation of the Federal Act. 18 U.S.C.A. § 2515. See Gelbard v. United States, 408 U.S. 41, 51-52, 92 S.Ct. 2357, 2362-2363, 33 L.Ed.2d 179, 188-89 (1972) (illegality of wiretap must be determined before a grand jury witness can be forced to testify about facts disclosed by the intercepted communication); In re Harkins, 624 F.2d 1160, 1166-67 (3d Cir.1980) (witness is entitled to challenge intercepted communication as illegal since illegality of the interception would bar the evidence). Consequently, since the taped conversations were illegally obtained by defendant in violation of our Wiretapping Act, the trial court properly excluded them from evidence. The exclusion of such illegally obtained telephone conversations from evidence in the circumstances of this case effectively served the purpose of the New Jersey Wiretapping Act to secure the privacy of such conversations. Cf. United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974); State v. Battle, 256 N.J. Super. 268, 275, 606 A.2d 1119 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1992). We need not decide whether the remedy of suppression should be applied in every case, particularly when a clear injustice may result thereby, such as the suppression of exculpatory evidence central to a defendant's innocence.
Even though defendant's taped recordation of his own conversation with his ex-wife and former mother-in-law was not illegally intercepted under our Wiretapping Act, it was not admissible to impeach the credibility of defendant's ex-wife or to support defendant's diminished capacity defense. At the outset, the record submitted on this appeal does not contain a transcript of the tape or summary of the conversation, and, therefore, we do not know exactly what the conversation was. Moreover, defendant *221 has not shown how this conversation might impeach his ex-wife's credibility since she had already admitted that she had lied about her affair, or how the conversation might be used to establish defendant's state of mind when he committed the offense. In sum the proffered evidence was inadmissible hearsay that did not fall within any recognized exception to the hearsay rule. Finally, there is nothing before us to show that the taped conversation was made "in a natural manner and under circumstances dispelling suspicion and involving no suggestion of sinister or improper motives." State v. Thornton, 38 N.J. 380, 390, 185 A.2d 9 (1962), cert. denied, 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963). See Evid.R. 63(12) (N.J.R.E. 803(c)(3)).
Beyond this, even assuming that the trial court erred by excluding the taped conversation among defendant, his ex-wife and former mother-in-law, the questionable relevance of the conversation coupled with other evidence tending to impeach the credibility of defendant's ex-wife, rendered the error harmless beyond a reasonable doubt. It was not "clearly capable of producing an unjust result." R. 2:10-2; State v. Lair, 62 N.J. 388, 392, 301 A.2d 748 (1973); State v. Bogus, 223 N.J. Super. 409, 429, 538 A.2d 1278 (App.Div.), certif. denied, 111 N.J. Super. 567, 546 A.2d 497 (1988). See also State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). The proof of defendant's guilt was overwhelming and there was no real possibility that the claimed error "led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).

V.
We are also satisfied that, with the exception of the order in which defendant was to serve his sentences, the sentences imposed upon him were neither illegal nor excessive. The sentences complied with the provisions of the New Jersey Code of Criminal Justice (Code) and resulted from the trial court's thorough *222 analysis and careful weighing of the aggravating and mitigating factors. The trial court found three aggravating factors:
(1) that defendant had engaged in a shooting on a public thoroughfare in disregard for public safety, and, after having already shot his ex-wife several times, returned to the vehicle and shot her twice more after she had pleaded for her life (N.J.S.A. 2C:44-1(a)(1)); (2) that based upon defendant's history of abusive conduct toward the victim, the risk existed that defendant would commit another offense (N.J.S.A. 2C:44-1a(3)); and (3) the need to deter defendant and others from violating the law (N.J.S.A. 2C:44-1a(9)).
The trial court found one mitigating factor, that being, "defendant's lack of prior criminal activity." N.J.S.A. 2C:44-1b(7). The court then found that the aggravating factors substantially outweighed the one mitigating factor. The trial court's findings in this regard are amply supported by the record and there is no sound reason or justification for us to interfere with them.
The court sentenced defendant to a four-year term for his conviction for unlawful possession of a handgun under the Seventh Count. The trial court ordered that this sentence be served before defendant served the consecutive nine-year term, with a four and one-half year period of parole ineligibility imposed for his conviction for aggravated assault under the Fifth Count. The sentencing range for defendant's conviction for aggravated assault, a crime of the second degree, was between five and ten years under N.J.S.A. 2C:43-6a(2), and since this was a Graves Act offense, the court was required to fix a mandatory minimum term of parole ineligibility between one-third and one-half of the sentence. N.J.S.A. 2C:43-6c. The sentencing range for defendant's conviction for unlawful possession of a handgun, a crime of the third degree, was between three and five years under N.J.S.A. 2C:43-6a(3). Thus, the terms of the sentences did not exceed the Code's statutory limits. On the contrary, the terms of the sentences complied with the guidelines and with the criteria for imposing consecutive sentences enunciated in State v. Yarbough, 100 N.J. 627, 643-44, 498 A.2d 1239 (1985), cert. denied, sub. nom., Yarbough v. New Jersey, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
*223 However, we are convinced that the trial court erred in requiring that defendant serve the four-year term imposed for his conviction for unlawful possession of a handgun under the Seventh Count before the more restrictive term of nine years with four and one-half years of parole ineligibility imposed for his conviction for aggravated assault under the Fifth Count. In Yarbough, supra, our Supreme Court adopted the guidelines utilized under the Federal Comprehensive Crime Control Act of 1984. 28 U.S.C.A. § 991 et seq. The federal guidelines, which are published in an Appendix attached to the Court's opinion in Yarbough, supra, provide, in pertinent part:
§ 3-107. [Concurrent and Consecutive Sentences.]
....
(d) In all cases in which consecutive sentences are imposed the sentencing court shall direct that the sentence most restrictive of the person's liberty shall be served first.
[Yarbough, supra, 100 N.J. at 648, 498 A.2d 1239].
Consequently, in order to comply with these guidelines, defendant's sentence must be modified to require that he serve the less-restrictive term of four years imposed for defendant's conviction for unlawful possession of a handgun under the Seventh Count, after he serves the more restrictive term of nine years with a four and one-half year period of parole ineligibility imposed for his conviction for aggravated assault under the Fifth Count. As so modified, the sentences imposed upon defendant are neither manifestly excessive nor unduly punitive and do not represent a miscarriage of justice or shock the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 400-01, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-88, 393-94, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984).

VI.
Finally, we turn to defendant's contention that he was denied the effective assistance of counsel because his trial counsel failed to submit evidence in support of his diminished capacity defense. *224 Specifically, defendant claims that trial counsel failed (1) to submit evidence that in addition to the one year period of treatment under the care of Dr. James Ferretti, he had undergone approximately two years of treatment for his mental condition by the Psychiatry Department at Northern State Prison during his incarceration; (2) to submit evidence that he was initially treated for a mental condition at the Essex County Jail; (3) to acquire and submit telephone records which would have documented the fact that he received harassing and threatening calls from one of his ex-wife's paramours, thereby subjecting him to increased stress and abuse; and (4) to exclude the testimony of the State's expert, Dr. Schiffman, who he claims was in collusion with the State as to his mental condition. Defendant argues that had this evidence been presented to the jury, he would not have been found guilty of aggravated assault.
Defendant's claim of ineffective assistance of counsel based on these grounds cannot be resolved on the basis of this record. The appropriate forum for resolving such claims is in the trial court on a post-conviction relief petition. See State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). "Ineffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot be raised in a prior proceeding." Ibid. (citing R. 3:22-4(a); State v. Mitchell, 126 N.J. 565, 585, 601 A.2d 198 (1992)). See also State v. Dixon, 125 N.J. 223, 262, 593 A.2d 266 (1991); State v. Walker, 80 N.J. 187, 194, 403 A.2d 1 (1979); State v. Sparano, 249 N.J. Super. 411, 419, 592 A.2d 608 (App.Div. 1991); State v. Sloan, 226 N.J. Super. 605, 612, 545 A.2d 230 (App.Div.), certif. denied, 113 N.J. 647, 552 A.2d 171 (1988).

VII.
Accordingly, except to modify the sentences to provide that the nine-year term with a four and one-half year period of parole ineligibility imposed upon defendant for his conviction for aggravated assault under the Fifth Count shall be served by defendant prior to serving the four-year term imposed for his conviction for *225 unlawful possession of a handgun under the Seventh Count, the judgment of conviction and order for commitment under review are affirmed. The affirmance of defendant's convictions, and the sentences, as modified, are without prejudice to the right of defendant to file a petition for post-conviction relief with the trial court, raising the claim of ineffective assistance of counsel. We do not retain jurisdiction.