760 A.2d 328 (2000)
334 N.J. Super. 516
STATE of New Jersey, Plaintiff-Respondent,
v.
Al-Muhhye ALLAH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 27, 2000.
Decided October 18, 2000.
*330 Ivelisse Torres, Public Defender, attorney for appellant (Edgar F. Devine, Jr., Designated Counsel, of counsel and on the brief).
Donald C. Campolo, Assistant Attorney General, Acting Essex County Prosecutor, attorney for respondent (Maryann K. Lynch, Special Deputy Attorney General, of counsel and on the brief).
Before Judges KLEINER, COBURN and AXELRAD.
*329 The opinion of the court was delivered by COBURN, J.A.D.
An Essex County Grand Jury returned an indictment charging defendant, Al-Muhhye Allah, and his co-defendant, Geraldo Garcia, with second-degree conspiracy to possess heroin with intent to distribute, N.J.S.A. 2C:5-2 (count one); third-degree possession of heroin, N.J.S.A. 2C:35-10a(1) (count two); second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5b(2) (count three); and third-degree possession of heroin with intent to distribute within a school zone, N.J.S.A. 2C:35-7 (count four).
The case was tried twice. The first trial ended when the prosecutor moved for a mistrial and the judge granted the motion on the ground of manifest necessity. In the second trial, presided over by another judge, the jury found defendant guilty of count two and acquitted him of the other offenses. He received a prison sentence of five years, two years to be served without parole. The appropriate fines and penalties were imposed.
The defendant never moved for dismissal of the indictment on double jeopardy grounds. Nonetheless, his primary point on appeal is that he is entitled to a reversal and dismissal of the indictment because the second trial was barred by double jeopardy. The dispositive issue is whether this belated claim can justify the relief sought. Although the trial court erroneously granted the mistrial, we agree with the State's argument that the defense of double jeopardy was waived and may not be raised on appeal. Since defendant's other points are without merit, the judgment is affirmed.

I
To place the double jeopardy issue in context, we briefly summarize the evidence presented by the State, which was essentially the same in both trials. On January 14, 1997, two officers stopped an automobile because it passed a stop sign without stopping. Garcia was the driver and defendant Allah was seated in the right front seat. One of the officers noticed an open cardboard box that appeared to contain envelopes of heroin. The box was located on the passenger's side of the front floor of the automobile. When the officer brought his observation to the attention of the suspects, Allah ran but was followed and arrested. The box contained 441 envelopes of heroin, which weighed over twenty grams.
Just before jury selection began for the first trial, the co-defendant, Geraldo Garcia, pleaded guilty to counts one, three, and four of the indictment pursuant to an agreement with the State that obliged him to testify at Allah's trial. While providing the sworn factual basis for his plea, Garcia acknowledged that he and Allah possessed the heroin, that they had purchased it for $2,000, each paying half, and that they intended to sell it. He said that when they *331 were arrested the box of heroin was under his seat in the car.
During the first trial, the State rested without calling Garcia, who thereafter testified as a witness for the defense. On direct examination he testified about the beneficial terms of his plea agreement, his promise to provide a truthful factual basis for his plea, and defendant's presence with him in the car. The only other questions posed by defense counsel dealt with the location and condition of the box. Garcia testified that the box was under his seat and that the heroin could not be seen because it was covered with newspapers. The obvious implication of that testimony was that Allah was innocent.
At this point, Garcia's attorney, who had been observing the proceedings, asked for permission to consult with her client, stating that since her client's case was still open, he had "Fifth Amendment rights to not testify about this." After the consultation, she advised the court that her client would "assert the Fifth on advice of counsel." Garcia confirmed on the stand, outside the jury's presence, in response to questioning by his counsel and a question posed by the prosecutor, that he would not testify based on the Fifth Amendment. Of course, had he been subjected to cross-examination, his testimony, if consistent with his sworn plea statement, would have implicated defendant. Defendant's attorney then indicated that his direct examination had been concluded.
The prosecutor responded to these developments by moving for a mistrial. Over defendant's objection, the trial court, believing that the witness was entitled to invoke the privilege against self-incrimination and that charging the jury to disregard his testimony would be ineffective, granted the State's motion on the theory of manifest necessity without attempting to order the witness to testify.
Defendant's attorney did not move to bar the second trial on the ground of double jeopardy.

II
Defendant contends that the trial judge who presided over the first trial erred in concluding that Garcia was entitled to rely on the privilege against self-incrimination after he had testified on direct examination. We agree.
In State v. Toscano, 13 N.J. 418, 100 A.2d 170 (1953), the Court observed that "if the testimony is given without claim of the privilege, it is permanently waived." Id. at 423, 100 A.2d 170. Furthermore, when "it appears that there is no reasonable ground to apprehend danger to the witness from his being compelled to answer," the "claim of privilege may be overruled by the court...." Ibid. Those principles were reiterated in State v. Fary, 19 N.J. 431, 435, 117 A.2d 499 (1955). Generally, a guilty plea to criminal charges is a waiver of the privilege against self-incrimination with respect to those charges. State v. Barboza, 115 N.J. 415, 420, 558 A.2d 1303 (1989). And, of course, once a witness answers a question about a matter without claiming the privilege, he may not assert the privilege as to other questions bearing on same matter. State v. Vassos, 237 N.J.Super. 585, 595, 568 A.2d 583 (App.Div.1990). We note that the State has not taken issue in its brief with these settled principles, which clearly demonstrate that the trial judge erred in failing to order the witness to continue testifying. Since nothing in the witness's direct testimony contradicted his prior statement, there is no reason to suppose that his answers on cross-examination would have exposed him to any danger. Nor is there any reason to suppose that he would have refused to testify if ordered to do so by the judge.
The double jeopardy clauses of the state and federal constitutions, N.J. Const. art. I, ¶ 11; U.S. Const. amend. V, and N.J.S.A. 2C:1-9d, bar retrial of a defendant who has objected to the grant of a mistrial unless there was a "manifest necessity" *332 for terminating the proceedings. State v. Gallegan, 117 N.J. 345, 353, 567 A.2d 204 (1989); State v. Dunns, 266 N.J.Super. 349, 362-63, 629 A.2d 922 (App. Div.1993). Although a trial court has wide discretion in determining whether to grant a mistrial, State v. Loyal, 164 N.J. 418, 436, 753 A.2d 1073 (2000), and although the propriety of the action depends on the unique facts of the case, id. at 435, 753 A.2d 1073, a mistrial should not be ordered when there is a viable alternative. Id. at 436-37, 753 A.2d 1073.
In this case, a viable alternative unquestionably existed. Since the witness had testified on direct examination about the crimes to which he had pleaded guilty, the trial judge erred, as we noted above, in concluding that he could refuse to answer further questions about those crimes on cross-examination based on the privilege against self-incrimination. The unexplored, viable alternative to granting a mistrial was to rule that the privilege had been waived and to order the witness to testify. State v. Toscano, supra, 13 N.J. at 423, 100 A.2d 170. There is no reason to assume that the witness would not have obeyed such an order. Therefore, we are satisfied that this mistrial was erroneously granted without the presence of "sufficient legal reason" and without "a manifest or absolute or overriding necessity." N.J.S.A. 2C:1-9d(3).
The State contends that even if the retrial violated double jeopardy principles the defendant's conviction should be affirmed because he failed to raise the issue in a timely fashion. The rule on which the State relies, R. 3:10-2(c), provides as follows:
Defenses and Objections Which Must be Raised Before Trial. The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation, except as otherwise provided by R. 3:10-2(d) (defenses which may be raised only before or after trial) and R. 3:10-2(e) (lack of jurisdiction), must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.

[Emphasis added.]
The defendant counters by arguing that good cause for relief from the waiver is present here because he was denied the constitutionally required effective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984); State v. Fritz, 105 N.J. 42, 53-58, 519 A.2d 336 (1987), when his attorney failed to make a timely objection to the retrial. By implication, he also argues that the conviction resulting from the second trial should be reversed despite the lack of a timely objection as a matter of plain error. R. 2:10-2.
In State v. Ebron, 61 N.J. 207, 294 A.2d 1 (1972), the Court rejected a double jeopardy claim, holding "that a defendant in a criminal proceeding who relies upon the defense[ ] of double jeopardy ... must place in evidence such material as he wishes the court to consider in support of this plea." Id. at 217-18, 294 A.2d 1. In reaching that conclusion, the Court noted that "[u]nder our rules of criminal procedure the defense of double jeopardy must be raised by motion before trial. R. 3:10-2." Id. at 216-17, 294 A.2d 1. That principle was reiterated in State v. Lane, 279 N.J.Super. 209, 215, 652 A.2d 724 (App. Div.1995). In State v. Del Fino, 100 N.J. 154, 495 A.2d 60 (1985), the Court enforced the waiver provision of R. 3:10-2 against a defendant who failed to file a timely motion seeking dismissal of the indictment based on defects in the grand jury proceedings, noting that the "failure of timely assertion, even of constitutional rights, may result in ... waiver." Id. at 160, 495 A.2d 60. And in State v. Hughes, 128 N.J.Super. 363, 320 A.2d 182 (App.Div. 1974), an appeal from an order denying post-conviction relief, we held that the petitioner had waived his constitutional right to challenge the grand jury array by failing *333 to bring a timely motion under R. 3:10-2.
The propriety of enforcing a procedural waiver-rule in relation to constitutional rights is a principle of long standing. For example, the United States Supreme Court has observed that "[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal ... cases by the failure to make timely assertion of the right...." Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834, 859 (1944). Moreover, in Peretz v. United States, 501 U.S. 923, 936, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808, 822 (1991), the Court noted with approval the holding of United States v. Bascaro, 742 F.2d 1335 (11th Cir.1984), that the absence of objection constitutes a waiver of the defense of double jeopardy.
Bascaro is one of many federal cases enforcing the procedural rules against raising the defense of double jeopardy for the first time on appeal. See, e.g., United States v. Milhim, 702 F.2d 522, 524 (5th Cir.1983); United States v. Perez, 565 F.2d 1227, 1232 (2d Cir.1977); United States v. Scott, 464 F.2d 832, 833 (D.C.Cir.1972); Haddad v. United States, 349 F.2d 511, 514 (9th Cir.), cert. denied, 382 U.S. 896, 86 S.Ct. 193, 15 L.Ed.2d 153 (1965); Barker v. Ohio, 328 F.2d 582, 584-85 (6th Cir. 1964). And it appears that the state courts have uniformly rejected belated claims of double jeopardy. See, e.g., State v. Jones, 166 Conn. 620, 353 A.2d 764 (1974); State v. Linscott, 416 A.2d 255, 258 (Me.1980); Commonwealth v. Deeran, 397 Mass. 136, 490 N.E.2d 412, 416-17 (1986); Commonwealth v. Spear, 43 Mass.App.Ct. 583, 686 N.E.2d 1037 (1997); State v. Michaud, 276 N.W.2d 73, 77 (Minn. 1979); Hall v. State, 650 P.2d 893, 896 (Okla.Crim.App.1982); and State v. Thomas, 654 A.2d 327, 330 (R.I.1995).
Although there are a few federal cases seemingly supportive of defendant's position that double jeopardy violations should be recognized on appeal under the plain error rule, they are distinguishable. For example, in Government of Virgin Islands v. Smith, 445 F.2d 1089 (3d Cir.1971), the court considered the plight of a defendant improperly tried a second time for the same offense where the double jeopardy issue was raised neither below nor on appeal. The court vacated the conviction as a matter of plain error without discussing the waiver issue, other than to note that other courts that had referred to the waiver-rule had gone on to determine the merits of the case. Smith is distinguishable in that the defendant had been found not guilty in the first trial. In United States v. Gunter, 546 F.2d 861 (10th Cir.1976), cert. denied, Gunter v. U.S., 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977), the court expressed the same view of plain error in this context, although it upheld the conviction on the ground that defendant's double jeopardy rights had not been violated. In United States v. Rivera, 872 F.2d 507 (1st Cir.), cert. denied, Rivera v. U.S., 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989), the court vacated defendant's conviction on one count of an indictment on which he was wrongly subjected to a second trial even though he had raised no objection below, again as a matter of plain error. In reaching that result, the court specifically rejected the waiver argument on the ground that since a constitutional right was involved the waiver had to be "`voluntary, knowing, [and] intelligent.' " Id. at 509 (citation omitted). Rivera is distinguishable in that the second trial involved a charge that the prosecutor agreed to dismiss during the first trial to get a conviction from the jury on other charges. The same analysis was followed by the court in U.S. v. Jarvis, 7 F.3d 404, 412-13 (4th Cir.1993) cert. denied, Jarvis v. U.S., 510 U.S. 1169, 114 S.Ct. 1200, 127 L.Ed.2d 549 (1994). Jarvis is distinguishable in that it involved a trial of a charge for which defendant had been previously tried and convicted.
We are not persuaded that Smith, Gunter, Rivera, and Jarvis should be read broadly so as to impact on the instant case.
*334 In State v. Price, 208 Conn. 387, 544 A.2d 184 (1988), the court resolved the waiver issue against the defendant, holding that the guarantee against double jeopardy is not one of those constitutional rights whose waiver must meet the knowing, intelligent and voluntary standard of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Id. at 185, 186. As the court observed, its position would appear to be consistent with the view expressed by the United States Supreme Court in United States v. Dinitz, 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 1080 n. 11, 47 L.Ed.2d 267, 275 n. 11 (1976) (citations omitted):
This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right.
And in Commonwealth v. Deeran, supra, the Supreme Judicial Court of Massachusetts reached the same result supported by this explanation:
Deeran argues that he cannot be deemed to have waived his double jeopardy claim under Mass.R.Crim.P. 30(c)(2) in the absence of a "knowing" and "intelligent" waiver. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d[L.Ed.] 1461 (1938). See Commonwealth v. Goldman, 395 Mass. 495, 507, 480 N.E.2d 1023 (1985) (court will indulge every reasonable presumption against waiver of fundamental constitutional rights). See also Commonwealth v. Cavanaugh, 371 Mass. 46, 53, 353 N.E.2d 732 (1976). Deeran argues that mere silence on his part in failing to assert the double jeopardy claim in 1979 does not constitute an "intentional" relinquishment of a constitutional right. Zerbst, supra. Yet Deeran fundamentally misperceives the waiver at issue in this case. Deeran's waiver under Mass.R.Crim.P. 30(c)(2) constitutes a procedural waiver of his right to assert a constitutional claim in a postconviction motion. The "knowing" and "intelligent" standard of Zerbst applies only to a defendant's "consent" to the actual relinquishment of the constitutional right. Id. 304 U.S. at 468[,] 58 S.Ct. at 1024 (whether defendant knowingly consented to lack of representation). In this case, Deeran's "consent" to being placed twice in jeopardy occurred, if at all, when he stood silent at the time of his retrial in 1972. Yet the motion judge's finding of waiver, and our affirmation thereof, are not based on Deeran's failure to raise a contemporaneous objection to the declaration of mistrial, but rather on his failure to assert the double jeopardy claim in his 1979 motion. The procedural waiver of a claim, as opposed to a defendant's express or implied consent to the loss of a substantive constitutional right, need not be "knowing" and "intelligent."
[490 N.E.2d at 416 (footnotes omitted).]
Based on the views expressed by our Supreme Court in State v. Ebron, supra, and State v. Del Fino, supra, as supported by the weight of federal authority and the entirely consistent cases from other states, we are satisfied that defendant's waiver under R. 3:10-2(c) should be enforced, and that, as a result, his otherwise valid double jeopardy claim should not be recognized under our plain error rule. R. 2:10-2.
Defendant contends that he is nonetheless entitled to reversal of his conviction and dismissal of the indictment because his attorney's failure to bring a timely motion to bar the second trial constituted ineffective assistance of counsel. Although some of the above cited cases have referred to this issue, none have chosen to discuss or resolve it, resting either on waiver, when denying the double jeopardy claim, or on plain error when, on occasion, granting relief.
The federal and state constitutions guarantee defendants the same right *335 to effective assistance of counsel. State v. Fisher, 156 N.J. 494, 499-500, 721 A.2d 291 (1998). Defendant has the burden of satisfying the two part Strickland test:
First, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown of the adversary process that renders the result unreliable.
[Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.]
[State v. Fisher, supra, 156 N.J. at 499, 721 A.2d 291.]
Reasonably competent counsel would have filed a motion to bar the second trial on double jeopardy grounds. Such a motion would have been successful and there is no conceivable strategy that would justify failing to file the motion. Thus, the first prong of the Strickland test is satisfied.
The second prong requires proof that the attorney's failure deprived defendant of a fair trial in the sense that the result was unreliable. In Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 319 (1986), the Court held that a conviction would be considered unreliable under Strickland if there was an unjustifiable failure to litigate a meritorious Fourth Amendment claim and "there is a reasonable probability that the verdict would have been different absent the excludable evidence...." The Supreme Court of New Jersey reached the same conclusion in State v. Fisher, supra.
However, we do not believe that either Kimmelman or Fisher is applicable to defendant's double jeopardy claim. There is no sense in which it can be said that his attorney's failure to file a timely motion to dismiss the indictment rendered the actual trial unfair. The conviction was not caused by ineffective representation during the trial; nor was the trial marred by the admission of constitutionally tainted evidence as a result of pretrial ineffectiveness. Recognition of the right to claim double jeopardy at this point would serve little purpose, other than permitting defendant to avoid a conviction fully supported by the evidence, since the defendant has already undergone the stress and expense of the second trial. Furthermore, such recognition would entirely undercut R. 3:10-2(c) and the cases sustaining its waiver provision. Although the defendant's interest in avoiding a second trial that violates the rule against double jeopardy is a substantial right, indeed, a right "cherished by all free men," State v. Roller, 29 N.J. 339, 344, 149 A.2d 238 (1959), it is a right that should be subject to procedural waiver at least where, as here, the prior trial resulted in neither conviction nor acquittal.
Affirmed.[1]
NOTES
[1] Defendant's remaining contentions are that the verdicts were inconsistent and that the judge should have lowered the sentence because of the inconsistency. Those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(E)(2).